```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

T. NOELLE WALKER,                   :
                                    :   NO. 1:03-CV-00685
        Plaintiff,                  :
                                    :   **OPINION & ORDER**
                                    :
    v.                              :
                                    :
                                    :
CSX TRANSPORTATION, INC.            :
                                    :
        Defendant.                  :

This matter is before the Court on the Defendant CSX Transportation, Inc.'s (hereinafter "CSX") Motion in Limine Regarding Michael Grefer, M.D. (doc. 31), the Plaintiff T. Noelle Walker's (hereinafter "Walker") Response in Opposition to CSX's Motion in Limine Regarding Dr. Michael Grefer (doc. 35), CSX's Memorandum in Support of Motion in Limine Regarding Dr. Michael Grefer (doc. 41), Walker's Supplemental Memorandum Opposing CSX's Response in Support of Motion in Limine Regarding Dr. Michael Grefer (doc. 42), CSX's Motion in Limine Regarding Fact Witnesses (doc. 32), Walker's Response in Opposition to CSX's Motion in Limine Regarding Fact Witnesses (doc. 36), CSX's Reply to Response in Opposition to Motion in Limine Regarding Fact Witnesses (doc. 40), CSX's Motion in Limine Regarding Walker's Exhibit 2 "Group Exhibit" - UTU CSXT Unsafe Condition Reports (hereinafter "Exhibit 2") (doc. 33), Walker's Response in Opposition to CSX's Motion in Limine Regarding Walker's Exhibit 2 (doc. 34), CSX's Reply to

Walker's Response to Motion in Limine Regarding Walker's Exhibit 2 (doc. 39), and Walker's Supplemental Memorandum Opposing CSX's Motion in Limine Regarding Walker's Group Exhibit 2 (doc. 43).

CSX moves the Court to preclude Walker from introducing as a trial witness Michael Grefer, M.D. (hereinafter "Dr. Grefer") (doc. 31). Walker filed her Complaint on October 3, 2003 (doc. 1). CSX notes that Walker has already been seen by at least five physicians and two physical therapists (Id.). All of whom are listed as trial witnesses (Id.). CSX avers that Walker did not see Dr. Grefer until at the earliest May 25, 2005 (Id.). CSX argues that to allow Dr. Grefer to testify at this late date, and comment upon not just the care and treatment of Walker, but offer a prognosis for Walker's future medical care and treatment, is prejudicial (Id.). CSX maintains that Dr. Grefer was sought out by Walker after the discovery cut-off date and the deadline for disclosing experts (Id.).

The Court having reviewed Walker's response to CSX's Motion in Limine as pertains to Dr. Grefer concludes that Dr. Grefer may testify as a treating physician of Walker. He may give his opinion as to Walker's current condition. However, Dr. Grefer may not provide an expert opinion as to the cause and effect of Walker's injuries.

In CSX's Motion in Limine Regarding Fact Witnesses, it urges the Court to preclude certain fact witnesses from

testifying at trial who were not identified until the Final Pretrial Order (doc. 32). Those witnesses to whom CSX is objecting are witnesses "5" through "11," as numbered in the Parties' Joint Final Pretrial Statement (doc. 28). CSX notes that none of these witnesses were identified in Walker's Initial Disclosures or any disclosure of witnesses (doc. 32). The identification of these witnesses, argues CSX, has occurred well after the discovery cut-off date and only weeks before the scheduled trial (Id.). This lateness in identifying witnesses, avers CSX, makes it impossible to allow any reasonable effort to investigate the alleged incidents, depose any of the witnesses, or prepare the appropriate responses to the alleged allegations (Id.).

Walker maintains that each of these witnesses objected to by CSX has specific knowledge of unsafe conditions on CSX's property and each witness has submitted one or more written reports to CSX regarding these conditions (doc. 36). Walker notes that she submitted written discovery requests to CSX regarding any prior complaints (Id.). Additionally, notes Walker, she served interrogatories on CSX asking for information regarding prior complaints pertaining to the ground conditions in the area where Walker was injured (Id.). At the end of discovery CSX failed to produce any documents in response to these specific requests and failed to identify any of these current or former employees (i.e., the objected to fact witnesses) who have information concerning

-3-

prior unsafe conditions (Id.).

CSX avers that it indicated in its answers to Walker's interrogatories that it was not aware of any such reports at the time that discovery was answered (doc. 40). CSX maintains that it believes these reports were not obtained from CSX; but, rather, the reports were obtained from union representatives (Id.). CSX contends that even to this day, it is not in possession of the documents belatedly submitted by Walker (Id.). Walker argues that had CSX diligently searched for the requested information it would have located the documents in question and identified the objected to witnesses (doc. 36). Walker urges the Court not to allow CSX to benefit from its failure to properly identify and produce the Unsafe Condition Reports relevant to this cause (Id.).

The Court finds that these witnesses and the documents relating thereto are admissible. The Court is not persuaded by CSX's explanation for failing to identify these documents and witnesses. Furthermore, these objected to witnesses and related documents are proffered to establish that dangerous conditions existed at the CSX worksite for which CSX should have been on notice. The testimony can not be offered to establish the fact that indeed a dangerous condition existed at the time of Walker's injury.

CSX objects to the introduction of any exhibits of Walker's listed and identified as Group Exhibit 2 (doc. 33). CSX

notes that not until June 7, 2005 did they receive from Walker a group of documents later identified as Exhibit 2 "Group Exhibit - UTU - CSXT Unsafe Conditions Reports," some twenty months after the filing of Walker's Complaint (Id.). The documents purport to be "unsafe" condition reports completed by various representatives of the United Transportation Union and, in some cases, responses and/or replies regarding those conditions by CSX employees (Id.).

CSX lists several reasons why these documents should not be permitted into evidence (doc. 39). One, the documents/reports were produced after the discovery cut-off (Id.). CSX disputes Walker's claim that these documents should have been produced by it because these documents were not in its possession (Id.). Furthermore, CSX avers that it answered the discovery responses correctly (Id.). CSX maintains that the documents were provided by Walker's union or other union representatives "of [Walker's] craft" (Id.).

Two, some of the documents refer to other items in the CSX yard, dissimilar to the substance which allegedly caused Walker's injuries (Id.). CSX notes that many of the reports mention things as varied as "large stones and scrap," "unknown substance[s]," "cross ties, knuckle length of pipe," "slurry," "cut levers," and the like (Id.). None of these items, contends CSX, remotely resemble what Walker claims she stepped in (Id.). Accordingly, their relevance is questionable, argues CSX (Id.).

Three, CSX contends the areas mentioned in the reports are too broad (Id.). CSX argues that Walker "has no idea herself where she may have 'picked up' or 'stepped in' the grey greasy substance" (Id.). Walker acknowledges that she worked in the "Bowl Yard" the evening of her fall, but she does not state where she was when she allegedly stepped in the complained of material (Id.). CSX objects to Walker introducing evidence of various material in areas Walker can not prove she walked in the evening of the alleged incident (Id.).

Lastly, the documents are too remote in time (Id.). CSX argues that documents contained in Walker's Exhibit 2, which refer to grey substances are dated, in some instances, two years prior to her fall (Id.). CSX admits that some of these reports may not have been addressed in a timely manner, but there is no proof they remained unaddressed for years (Id.). As such, CSX concludes that the unsafe condition reports are too remote in time to bear any relevance to the issues of fact before the Court (Id.).

Defendant cites Holbrook v. Norfolk Southern Railway Co., 414 F.3d 739 (7th Cir. 2005) in which a Federal Employer's Liability Act ("FELA") plaintiff claimed injury as a result of slipping on a foreign substance. The Seventh Circuit upheld a motion for summary judgment against the plaintiff despite plaintiff's evidence of pools of oil and photographs of pools of oil in the yard. Id. The Seventh Circuit reasoned that this

evidence did not establish actual or constructive notice of the conditions of which the plaintiff complained.  Id.

Walker counters citing Davis v. CSX Trans., 2005 WL 1935676 (W.D. Ky. Aug. 5, 2005), in which the court denied a motion for summary judgment brought by the defendant which was based, at least in part, on Holbrook.  Id.  CSX, as it has attempted to do here, relied on Holbrook in Davis to support the claim that it had no notice of the dangers created by oil in its own railroad yard. Id.  The Davis court noted that the plaintiff in Holbrook was uncertain whether oil was present on the ladder before he got onto it or whether he tracked it on to the ladder himself.  Id. Additionally, the plaintiff in Davis did not even know whether he actually stepped in oil that day.  Id.  Davis concluded that the plaintiff presented sufficient evidence to establish that the plaintiff's work boots were clean when she arrived at work, that she stepped in the hazardous substance prior to the accident, and that the hazardous substance caused her to lose her footing and fall.  Id.

CSX argues that Walker, like the plaintiff in Davis, has presented sufficient evidence for a jury to make a reasonable inference that CSX's negligence played a role in her injury (doc. 46).  For instance, Walker has stated that prior to entering the "Bowl Yard" her boots were clean (Id.).  Additionally, just prior to slipping Walker went into the "Bowl Yard," which allegedly has

had a problem with the grey greasy substance in the past (Id.). Walker states, "[j]ust like the plaintiff in Davis, yet unlike the plaintiff in Holbrook, . . . [she] can place herself within both the temporal and physical vicinity of a known dangerous condition" (Id.). Walker also distinguishes Holbrook by noting, as did the court in Davis, that the missing proof in Holbrook concerned whether there existed a dangerous condition from which the oil could have originated - here Walker has presented substantial evidence of the existence of hazardous, greasy substances in the "Bowl Yard" (Id.). This evidence consists of her own testimony that greasy substances are known to leak from tank cars in the "Bowl Yard," as well as the unsafe condition reports at issue in CSX's Motion in Limine (Id.).

Accordingly, the Court finds that the reports at issue in CSX's Motion in Limine Regarding Walker's Exhibit 2 should be admitted. The documents support the reasonable inference that CSX should have been on notice regarding greasy substances in the "Bowl Yard." Again, the documents are not presented to establish that the greasy substance complained of by Walker in fact existed the day of her fall, but, rather to support the notion that CSX should have been on notice regarding the presence of hazardous, greasy substances in the "Bowl Yard."

In conclusion, CSX's Motion in Limine concerning Dr. Grefer is GRANTED IN PART and DENIED IN PART (doc. 31). CSX's

Motion in Limine Regarding Certain Fact Witnesses is DENIED (doc. 32), and CSX's Motion in Limine Regarding Walker's Exhibit 2 is DENIED (doc. 33).

        SO ORDERED.

Dated: September 8, 2005      <u>s/S. Arthur Spiegel</u>
                                          S. Arthur Spiegel
                                          United States Senior District Judge